# United States District Court
### EASTERN DISTRICT OF TEXAS
#### SHERMAN DIVISION

| | | |
|---|---|---|
| AIMBRIDGE EMPLOYEE SERVICE CORP., | § § § | |
| *Plaintiff*, | § § | |
| v. | § § | Civil Action No. 4:25-cv-1014 |
| | § | Judge Mazzant |
| NATIONAL LABOR RELATIONS BOARD, et al., | § § | |
| | § | |
| *Defendants*. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Rochester Regional Joint Board, Workers United's Motion for Leave to Intervene (Dkt. #22). Having considered the Motion and the relevant pleadings, the Court finds that the Motion should be **DENIED**.

## BACKGROUND

In the summer of 2024, Rochester Regional Joint Board, Workers United (the "Union") began representing certain workers at the Buffalo Hyatt Regency Hotel. In response to repeated Union campaigning, Plaintiff allegedly began an "aggressive . . . counter-campaign" (Dkt. #22-1 at p. 5). Months later, the Union filed three unfair labor practice charges against Plaintiff alleging dozens of violations of the National Labor Relations Act ("NLRA"). On June 16, 2025, the National Labor Relations Board ("NLRB") filed a complaint against Plaintiff alleging eighteen violations of the NLRA. Plaintiff subsequently filed the instant action to enjoin the NLRB from prosecuting it for alleged unfair labor practices "until Congress corrects the NLRB Defendants' unconstitutional removal protections" (Dkt. #26 at p. 1).

On January 27, 2026, the Union filed the present Motion, seeking to intervene in this action under the stated purpose of assisting its members in asserting their rights through the NLRB's proceedings (Dkt. #22). Plaintiff filed its response on February 10, 2026 (Dkt. #26). The Motion is now ripe for adjudication.

## LEGAL STANDARD

Federal Rule of Civil Procedure 24 provides for two forms of intervention: (1) intervention of right (mandatory intervention); and (2) permissive intervention. FED. R. CIV. P. 24. A proposed intervenor is entitled to mandatory intervention if the following elements are satisfied:

1.  [T]he application for intervention must be timely;

2.  the applicant must have an interest relating to the property or transaction which is the subject of the action;

3.  the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede his ability to protect that interest; [and]

4.  the applicant's interest must be inadequately represented by the existing parties to the suit.

*See* FED. R. CIV. P. 24(a)(2); *see also Texas v. United States*, 805 F.3d 653, 657 (5th Cir. 2015).[1]

"Failure to satisfy any one requirement precludes intervention of right." *Haspel & Davis Milling & Planting Co. v. Bd. of Levee Comm'rs of the Orleans Levee Dist.*, 493 F.3d 570, 578 (5th Cir. 2007).[2]

If intervention is not mandatory, then it is permissive. A court may permit anyone to intervene whom "has a claim or defense that shares with the main action a common question of

---

[1]  Intervention of right is also permitted when there is an "unconditional right to intervene by a federal statute." FED. R. CIV. P. 24(a)(1).

[2]  Although Rule 24 enumerates threshold requirements for intervention, the Fifth Circuit, in *Texas*, has been clear that those requirements should be "liberally construed." 805 F.3d at 656–57 ("Although the movant bears the burden of establishing its right to intervene, Rule 24 is to be liberally construed." (citation modified)). "Federal courts should allow intervention where no one would be hurt and greater justice could be attained." *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994) (internal quotation marks omitted); *see also Brumfield v. Dodd*, 749 F.3d 339, 342 (5th Cir. 2014) ("[T]he inquiry is a flexible one, and a practical analysis of the facts and circumstances of each case is appropriate.").

law or fact" as long as the intervention does not "unduly delay or prejudice the adjudication of the original parties' rights." FED. R. CIV. P. 24(b)(1)(B), (b)(3). The decision to permit intervention is "wholly discretionary," even if there is a common question of law or fact and the requirements of Rule 24(b) are satisfied. *Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*, No. 1-15-CV-134, 2015 WL 11613286, at *2 (W.D. Tex. Dec. 22, 2015) (internal quotation marks omitted) (quoting *Bush v. Viterna*, 740 F.2d 350, 359 (5th Cir. 1984)).

## ANALYSIS

### I.    Mandatory Intervention

Federal Rule of Civil Procedure 24(a)(2) controls intervention of right in this case. The Union, as the movant seeking to intervene, bears the burden of demonstrating entitlement to intervene and must establish each of the requirements under that Rule. *Int'l Tank Terminals, Ltd. v. M/V Acadia Forest*, 579 F.2d 964, 967 (5th Cir. 1978). If the Union fails to satisfy its burden on any one requirement, it will generally have no mandatory right to intervene. *Haspel*, 493 F.3d at 578; *see also Int'l Tank*, 579 F.2d at 967 ("If an intervenor fails to meet one of these requirements, then it cannot intervene as a matter of right.").

### A.    Whether the Motion is timely

The first factor of the intervention of right, timeliness, is itself comprised of four subparts: "(1) the length of time between the would-be intervenor's learning of his interest and his petition to intervene, (2) the extent of prejudice to existing parties from allowing late intervention, (3) the extent of prejudice to the would-be intervenor if the petition is denied, and (4) any unusual circumstances." *In re Lease Oil Antitrust Litig.*, 570 F.3d 244, 247–48 (5th Cir. 2009).

Plaintiff's initial pleading was filed on September 16, 2025, and Plaintiff filed its first amended complaint on January 16, 2026 (Dkt. #1; Dkt. #14). The Union alleges that it discovered

the existence of this lawsuit via email correspondence on January 8, 2026, and thus filed the present Motion within 19 days of that date (*See* Dkt. #22). The first subpart thus weighs heavily in the Union's favor, as "[t]he trend in Fifth Circuit case law is that a movant timely intervenes when it seeks to do so within several months of learning that the parties are no longer protecting its interests but that, after close to a year, a motion to intervene will likely be untimely." *ODonnell v. Harris County*, 808 F. Supp. 3d 738, 751 (S.D. Tex. 2025) (collecting cases).

Plaintiff argues that "[e]ven if the Union is not responsible for a significant delay," its intervention in this case would cause such prejudice to Plaintiff as to render it wholly untimely (Dkt. #26 at p. 4). Plaintiff asks the Court to consider the threat posed by the Union's future filings: "[a]s evident from the contents of the Union's Motion, its future filings will include factual allegations and arguments about [alleged unfair labor practices] and the Union's failed organizing campaign" (Dkt. #26 at p. 4). In Plaintiff's view, these proposed future filings threaten to disrupt the "narrow constitutional questions before this Court" and otherwise impede Plaintiff's ability to follow the existing summary judgment briefing schedule (Dkt. #26 at p. 4). However, "[e]ven accepting this as true, prejudice to a plaintiff is not a standalone reason to deny a timely motion to intervene." *Gonzales v. City of Austin*, No. 1:22-CV-655-RP, 2023 WL 4940421, at *5 (W.D. Tex. Aug. 2, 2023). In the absence of any "unusual circumstances," the Court finds for the Union on this issue. *Lease Oil*, 570 F.3d at 247–48.

### B.    Whether the Union has an interest relating to the property or transaction

An applicant for intervention must also have an interest relating to the property or transaction which forms the subject matter of the action. Intervention of right requires a "direct, substantial, legally protectable interest in the proceedings." *New Orleans Pub. Serv., Inc. v. United Gas Pipeline Co.*, 732 F.2d 452, 463 (5th Cir. 1984) (en banc) (internal quotation marks omitted)

4

(quoting *Diaz v. S. Drilling Corp.*, 427 F.2d 1118, 1124 (5th Cir. 1970), *cert. denied sub nom.*, *Trefina v. United States*, 400 U.S. 878 (1970)). In other words, "the inquiry turns on whether the intervenor has a stake in the matter that goes beyond a generalized preference that the case come out a certain way." *Texas*, 805 F.3d at 657.

In support of its interest in the present action, the Union directs the Court to the Supreme Court's decision in *UAW Local 283 v. Scofield*, 382 U.S. 205 (1965), wherein a charging party was allowed to intervene in a first appellate review proceeding. Plaintiff counters that the Union's role as a charging party grants it an interest in the proceeding only insofar as the Union desires "to see the administrative case proceed," and that it possesses, "at most, a derivative interest in the timing and outcome of federal enforcement" (Dkt. #26 at p. 7).

This Court has previously determined that *Scofield* is not directly applicable to the circumstances presented in this case. *Hudson Inst. of Process Rsch. Inc. v. Nat'l Lab. Rels. Bd.*, No. 4:24-CV-989, 2026 WL 1295959, at *4 (E.D. Tex. May 12, 2026) (first citing *Scofield*, 382 U.S. at 212, 218; then citing *Concrete Materials of Ga., Inc. v. N.L.R.B.*, 440 F.2d 61, 67 (5th Cir. 1971)). Indeed, "[u]nlike *Scofield*, this case does not involve an appellate review of an enforcement proceeding following a final NLRB order." *Id.* Rather, the Union, as a charging party, seeks to prevent Plaintiff from receiving declaratory or injunctive relief against the NLRB, which could impact the underlying proceedings in a myriad of ways.[3] In this context, and "[g]iven the unique interest held by a charging party in proceedings related to its charges," the Court finds that the

---

[3] While discussion of the remedies available to Plaintiff lies squarely beyond the scope of this Memorandum Opinion and Order, at least one district court in this Circuit has found that the underlying constitutional issue "arises from a 'stacked' or 'layered' structure of removal protections spanning multiple statutes and institutions," such that relief via severance could vary widely in praxis. *Aunt Bertha v. Nat'l Lab. Rels. Bd.*, No. 4:24-CV-00798-P, 2026 WL 1365028, at *2 (N.D. Tex. May 15, 2026).

Union possesses an interest sufficient to satisfy this mandatory intervention requirement. *Hudson*, 2026 WL 1295959, at *5.

> **C.** **Whether disposition of the action may, as a practical matter, impair or impede the Union's ability to protect its interest**

The Union argues that "[b]y challenging the constitutionality of the NLRB's structure, [Plaintiff] threatens to eliminate the right of the Union and the employees it represents to seek redress when their rights under the [NLRA] are violated" (Dkt. #22-1 at p. 10). The Union further claims that its membership will be heavily affected by the outcome of this action on account of the ways in which this case will influence the underlying NLRB proceedings against Plaintiff. In response, Plaintiff generally asserts that the NLRB is the institution best situated to defend against the constitutional challenges asserted in this action and reminds the Court that "the Union is free to seek leave to participate as amicus" (Dkt. #26 at p. 7). While both of Plaintiff's statements may be true, the Union has indicated that its ability to defend its interest in its daily operations and in the consequences of its underlying charge may be impaired by the Court's decision in this case. Because the Court's opinion on the constitutionality of removal protections threatens the outcome of the Union's charges, the Union has carried its burden as to this element of mandatory intervention. *See, e.g.*, *Waffle House, Inc. v. Nat'l Lab. Rels. Bd.*, No. CV 3:24-6751-MGL, 2025 WL 602744, at *2 (D.S.C. Feb. 10, 2025) (holding that "the Court's disposition of Waffle House's requests for relief will inevitably impair or impede the Union's interests in the [underlying] NLRB proceeding," which "was initiated as the result of the Union's [unfair labor practice] charge"); *see also Hudson*, 2026 WL 1295959, at *5.

**D.      Whether the Union's interest is inadequately represented by the existing parties to the suit**

Finally, the Union bears the burden of proving that the NLRB does not adequately represent its interest. Both the Supreme Court and the Fifth Circuit have identified Plaintiff's burden under this element as "minimal." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972) ("The requirement of the Rule is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal."); *Ross v. Marshall*, 426 F.3d 745, 761 (5th Cir. 2005) ("We have described this burden as 'minimal,' noting that a potential intervenor need only show that 'representation by the existing parties *may* be inadequate.'" (quoting *Heaton v. Monogram Credit Card Bank of Ga.*, 297 F.3d 416, 425 (5th Cir. 2002))). However, the Fifth Circuit has determined that "[t]his requirement . . . must have some teeth, so there are two presumptions of adequate representation." *Brumfield*, 749 F.3d at 345 (citing *Edwards v. City of Houston*, 78 F.3d 983, 1005 (5th Cir. 1996)). As particularly relevant here, the second presumption "arises when the would-be intervenor has the same ultimate objective as a party to the lawsuit," in which event "the applicant for intervention must show adversity of interest, collusion, or nonfeasance on the part of the existing party to overcome the presumption." *Id.* (quoting *Edwards*, 78 F.3d at 1005).

Both the Union and the NLRB share the same ultimate objective in this lawsuit—to "enforce[e] the NLRA" such that Plaintiff is prevented from receiving declaratory and injunctive relief against the NLRB (Dkt. #22-1 at p. 11). The Union, as the intervening party, has the burden to "demonstrate how [its] allegedly divergent interests would have any impact on the [current] defense." *Texas*, 805 F.3d at 662. This burden has not been carried, as the Union has not identified

7

a single unique defense or concrete effect on the litigation that its intervention would bring about. *See id*.

Nor can the Union point to a single applicable exception to the presumption of adequate representation offered in *Brumfield*, 749 F.3d at 345. First, the Union has not indicated that the NLRB is adverse to its own interests. Second, it has not alleged that the NLRB has colluded with Plaintiff or is otherwise being negatively influenced by any named party. Finally, the Union has not claimed that the NLRB is incapable of tackling the complex constitutional questions at issue. Quite the opposite: Plaintiff admits that the "NLRB is surely capable of defending itself in this action" (Dkt. #22-1 at p. 12).

Because the "[f]ailure to satisfy any one requirement precludes intervention of right," the Court must deny the Union's request for mandatory intervention. *Louisiana v. Burgum*, 132 F.4th 918, 922 (5th Cir. 2025).

## II.    Permissive Intervention

Permissive intervention is provided for by Federal Rule of Civil Procedure 24(b)(1), which holds in relevant part that "[o]n timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Importantly, permissive intervention under Rule 24(b) is "wholly discretionary" and "may be denied even when the requirements of Rule 24(b) are satisfied." *Turner v. Cincinnati Ins. Co.*, 9 F.4th 300, 317 (5th Cir. 2021) (internal quotation marks omitted) (quoting *United Gas*, 732 F.2d at 471–72). Because the Union has not met the requirements of Rule 24(b), the Court declines to exercise its discretion in favor of permissive intervention.

8

## CONCLUSION

It is therefore **ORDERED** that Rochester Regional Joint Board, Workers United's Motion

for Leave to Intervene (Dkt. #22) is hereby **DENIED**.

   **IT IS SO ORDERED.**

   **SIGNED this 23rd day of June, 2026.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE