# United States District Court

### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| AIMBRIDGE EMPLOYEE SERVICE CORP., | § § § | |
| *Plaintiff*, | § § | |
| v. | § § | Civil Action No. 4:25-cv-1014 |
| | | Judge Mazzant |
| NATIONAL LABOR RELATIONS BOARD, et al., | § § § | |
| *Defendants*. | § § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court are two motions: Defendants' Motion for Summary Judgment (Dkt. #25) and Plaintiff's Motion for Summary Judgment (Dkt. #27) (collectively, the "Motions"). Having considered the Motions and the relevant pleadings, the Court finds that the Motions should be **GRANTED in part** and **DENIED in part**.

## BACKGROUND

This Court faces a constitutional question pertaining to the "cornerstone of American labor law," the National Labor Relations Act ("NLRA"), the Administrative Procedure Act ("APA"), and the organizational hierarchy of the National Labor Relations Board ("NLRB"). *Space Expl. Techs. Corp. v. Nat'l Lab. Rels. Bd.*, 151 F.4th 761, 766 (5th Cir. 2025) (hereinafter "*SpaceX*").

### I.    Statutory Background

The NLRB is tasked with administering and enforcing the NLRA, which includes processing allegations that an employer or union has committed an unfair labor practice in violation of 29 U.S.C. §§ 151–169. To help itself shoulder this tremendous obligation, the NLRB employs administrative law judges ("ALJs" or "NLRB ALJs") as initial adjudicators. These ALJs are

responsible for issuing initial decisions, which are ultimately "subject to review by the agency's five-member Board—a quasi-judicial body of presidential appointees that sits atop the NLRB's hierarchy." *SpaceX*, 151 F.4th at 766. ALJs themselves are reviewed by the Merit Systems Protection Board ("MSPB"), "an independent, quasi-judicial agency that adjudicates federal employee appeals from agency personnel actions." *Id.* (citation modified).

The President maintains direct yet statutorily limited influence over the tenure of officers of the five-member Board ("Board Members") and members of the MSPB. Board Members may "be removed by the President, upon notice and hearing, for neglect of duty or malfeasance in office, but for no other cause." 29 U.S.C. § 153(a). Members of the MSPB may likewise be "removed by the President only for inefficiency, neglect of duty, or malfeasance in office." 5 U.S.C. § 1202(d). The President lacks comparable control over ALJs, which are even further insulated from removal by 5 U.S.C. § 7521(a) of the APA.[1] Under 5 U.S.C. § 7521(a), an ALJ may be removed "only for good cause established and determined by the Merit Systems Protection Board on the record after opportunity for hearing before the Board." In other words, ALJs enjoy a two-step process which limits the removal power of the executive. First, an ALJ is entitled to a hearing before the Board, *see* 5 C.F.R. § 1201.137; and second, the ALJ will remain in their position unless the MSPB determines that good cause for removal has been established. 5 U.S.C. § 7521(a). Furthermore, because neither MSPB nor NLRB Board Members are removable by the President except for cause, ALJs are significantly shielded from removal by the executive.

---

[1] Since its enactment in 1946, the APA has provided a structure for how federal agencies create rules and conduct adjudications, including the ability of ALJs to preside over agency proceedings. Pub. L. 79-404, 60 Stat. 237 (1946).

The present litigation centers around the constitutionality "of these multi-layered removal provisions." *SpaceX*, 151 F.4th at 768.

## II.    Procedural Background

At its core, this case arises from a series of unlawful labor practice charges filed by the Rochester Regional Joint Board, Workers United (the "Union") against Plaintiff, an employment management corporation servicing various hotels and resorts. On June 16, 2025, after repeated instances of Union campaigning, the Regional Director for NLRB Region 3 in Buffalo, New York, issued a Consolidated Complaint and Notice of Hearing against Plaintiff alleging eighteen violations of the NLRA. The alleged violations included Plaintiff's termination of three employees because of their support for the Union, surveillance of employees engaged in Union activities, and suggestion that the facility would close if employees selected the Union as their bargaining representative (Dkt. #25-1). Plaintiff subsequently filed the instant action to enjoin the NLRB from prosecuting it for alleged unfair labor practices "until Congress corrects the NLRB Defendants' unconstitutional removal protections" (Dkt. #26 at p. 1).

On January 30, 2026, Defendants filed their Motion for Summary Judgment (Dkt. #25). On February 20, 2026, Plaintiff filed its parallel Motion for Summary Judgment and response (Dkt. #27). On March 13, 2026, Defendants filed their opposition to Plaintiff's Motion for Summary Judgment and reply (Dkt. #30). On March 27, 2026, Plaintiff filed its combined reply in support of its Motion for Summary Judgment and sur-reply (Dkt. #31). Finally, on April 3, 2026, Defendants filed their sur-reply in support of their Motion for Summary Judgment (Dkt. #32). The Motions are now ripe for adjudication.

## LEGAL STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Summary judgment is proper under Rule 56(a) of the Federal Rules of Civil Procedure "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Moreover, "[s]ummary judgment is appropriate where the only issue before the court is a pure question of law," *Sheline v. Dun & Bradstreet Corp.*, 948 F.2d 174, 176 (5th Cir. 1991), and "[a] facial challenge to the constitutionality of a statute presents a pure question of law." *United States v. Rafoi*, 60 F.4th 982, 996 (5th Cir. 2023).

The Declaratory Judgment Act permits a federal court to "declare the rights and other legal relations" of any interested party seeking such declaration where an actual justiciable controversy is found. 28 U.S.C. § 2201(a). The Act is "an enabling act, which confers a discretion on the courts rather than an absolute right upon the litigant." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995). Further, federal courts have "unique and substantial discretion in deciding whether to declare the rights of litigants." *Id.* at 286.

Finally, to obtain a permanent injunction, a prevailing party must demonstrate: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). In determining whether to grant such equitable relief, a court "must narrowly tailor an

injunction to remedy the specific action which gives rise to the order." *Green Valley Special Util. Dist. v. City of Schertz*, 969 F.3d 460, 478 n.39 (5th Cir. 2020).

## ANALYSIS

At the outset of their Motion for Summary Judgment, Defendants reference multiple letters from Sarah M. Harris, the Acting Solicitor General of the United States, to the Honorable Mike Johnson, the Speaker of the United States House of Representatives, to indicate that they "do[] not defend the removal restrictions, consistent with the stated views of the Department of Justice" (Dkt. #25 at p. 9).[2] Indeed, rather than defend certain statutory provisions which the Fifth Circuit has already concluded are all but unconstitutional, Defendants have instead sought severance of any offending provision as an alternative to a permanent injunction. *See SpaceX*, 151 F.4th at 781.

As modified by Defendants' ever-evolving posture, the question before this Court is perhaps best divided into three parts. First, the Court must determine whether the contested statutory provisions are unconstitutional, as "[a] statute must be found to be inoperative or unconstitutional as it was written before the issue of severance can be reached." *Space Expl. Techs. Corp. v. Nat'l Lab. Rels. Bd.*, 741 F. Supp. 3d 630, 638 (W.D. Tex. 2024), *aff'd*, 151 F.4th at 761. Then, the Court must determine whether the offending provisions present an appropriate opportunity for severance. Finally, in the event that the Court finds the offending provisions are severable, it must address whether severance should take the place of a permanent injunction.

---

[2]  Letter from Sarah M. Harris, Acting Solicitor General, to the Honorable Mike Johnson, Speaker of the United States House of Representatives (Feb. 12, 2025), https://www.justice.gov/oip/media/1389526/dl?inline; Letter from Sarah M. Harris, Acting Solicitor General, to the Honorable Mike Johnson, Speaker of the United States House of Representatives (Feb. 20, 2025), https://www.justice.gov/oip/media/1390336/dl?inline.

Prior to conducting any further analysis, the Court sees fit to briefly address two arguments raised by Defendants. First, Defendants argue that this Court lacks the necessary subject-matter jurisdiction to enjoin the NLRB under the Norris-LaGuardia Act, 29 U.S.C. § 101 *et seq*. Second, Defendants argue that Plaintiff has not shown sufficient causal harm to challenge the constitutionality of removal protections. Both arguments collapse in the face of direct Fifth Circuit precedent, which this Court is bound to apply. *See Green Valley Special Util. Dist. v. Walker*, 324 F.R.D. 176, 187 (W.D. Tex. 2018) ("Though other courts of appeals have questioned the wisdom of this interpretation, this court is bound by the holdings of the circuit in which it sits.").

The Court first disposes of Defendants' jurisdictional concern. In *SpaceX*, the Fifth Circuit analyzed the text of 29 U.S.C. § 113 and held that the Norris-LaGuardia Act cannot apply to an employer's suit against the NLRB because the agency itself is not involved in the same industry as the parties to the underlying labor dispute. *SpaceX*, 151 F.4th at 770–71. It further applied the three factors outlined in *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994), to determine that "[a]ll three *Thunder Basin* factors confirm that these structural challenges are not 'of the type' targeted by the Norris-LaGuardia Act's jurisdictional bar." *SpaceX*, 151 F.4th at 771. Because the action before the Court similarly involves an employer's suit against the NLRB and calls into question the constitutionality of removal protections, this precedent clearly resolves Defendants' jurisdictional challenge in Plaintiff's favor. *See id*. at 768 ("The text of the Act resolves the matter: . . . district courts have jurisdiction to enjoin the NLRB.").

Next, the Court addresses Plaintiff's alleged failure to identify any causal harm resulting from the relevant removal restrictions. In *SpaceX*, the Fifth Circuit found that where an employer challenges "not past agency conduct but the validity of the ongoing proceeding itself," the

6

employer identifies an injury sufficient to warrant declaratory relief. 151 F.4th at 780. In such an instance, "the proceeding is the injury. The harm is not downstream from the process—it *is* the process . . . . [O]nce an unconstitutional proceeding begins, the damage is done." *Id.* This rationale compels the Court to find that Plaintiff has identified a harm sufficient to warrant relief. Because Plaintiff is not seeking to remedy past NLRB conduct but is rather seeking to enjoin the NLRB from subjecting it to multiple unconstitutional proceedings in the future, "[n]o further showing—such as how the outcome might differ under a valid structure—is required." *Id.*

Having applied Fifth Circuit precedent directly to the matter at hand, the Court is now tasked with analyzing the requested relief in greater detail.

## I.      Declaratory Relief

Plaintiff plainly asks this Court to "hold that removal protections for NLRB members and ALJs are unconstitutional" (Dkt. #28 at p. 8). As the terms of this request comport with the Fifth Circuit's ruling in *SpaceX*, the Court sees fit to grant Plaintiff's request for declaratory relief related to the constitutionality of removal protections for ALJs and Board Members. In *SpaceX*, the Fifth Circuit determined that "ALJs are inferior officers insulated by two layers of for-cause removal protection—an arrangement the Supreme Court and [the Fifth] circuit have both held unconstitutional." *Id.* at 767. It further held that although "the merits question for Board Members' removal protections is a closer call than for ALJs," those protections are similarly unconstitutional. *Id.* at 778.

Under such direct precedent, "[l]ittle need be added to what has been said on this subject." *Franks Bros. Co. v. Nat'l Lab. Rels. Bd.*, 321 U.S. 702, 704 (1944). This Court takes but a mere step beyond the Fifth Circuit's ruling in *SpaceX* to hold that Plaintiff is not only *likely* to succeed on the merits of its constitutional challenge against the removal protections enjoyed by ALJs and Board

7

Members, but that Plaintiff *does* succeed on the merits of the same altogether. 151 F.4th at 767. Plaintiff's success on the merits, effectuated through the Fifth Circuit's holding in *SpaceX*, is further grounded in a thorough consideration of the Supreme Court's past rulings in *Myers v. United States*, 272 U.S. 52, (1926), *Humphrey's Executor v. United States*, 295 U.S. 602 (1935), and *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197 (2020), along with its more recent rulings in *Trump v. Cook*, No. 25A312, 2026 WL 1855613, at *4 (U.S. June 29, 2026), and *Trump v. Slaughter*, No. 25-332, 2026 WL 1855612, at *6 (U.S. June 29, 2026). In the absence of any defense of the constitutionality of the relevant removal protections, the Court here substitutes a lengthy analysis for a brief one.

Article II of the Constitution vests "[t]he executive Power" in "a President," who must "take Care that the Laws be faithfully executed." U.S. Const. art. II, § 1, cl. 1; *id.* § 3. In fulfilling their role as executive, "the Framers expected that the President would rely on subordinate officers for assistance." *Seila Law*, 591 U.S. at 204. These officers are subject to the President's removal power, as "[s]ince 1789, the Constitution has been understood to empower the President to keep these officers accountable—by removing them from office, if necessary." *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 483 (2010). Importantly, Congress generally may not "interfere with the President's exercise of the 'executive power' and his constitutionally appointed duty to 'take care that the laws be faithfully executed' under Article II." *Morrison v. Olson*, 487 U.S. 654, 689–90 (1988).

In delineating the bounds of appropriate congressional interference, the Supreme Court has historically "recognized only two exceptions to the President's unrestricted removal power." *Seila*

8

*Law*, 591 U.S. at 204. The Court will briefly examine each and offer insight as to their applicability to Plaintiff's constitutional challenges.

The first exception, outlined in the late *Humphrey's Executor*, once permitted Congress to "create expert agencies led by a group of principal officers removable by the President only for good cause." *Id.* (citing *Humphrey's Executor*, 295 U.S. at 602). This legal rule is inapplicable to the NLRB and the present action, as the Fifth Circuit has already determined that the "NLRB's structure and powers take it outside that narrow exception." *SpaceX*, 151 F.4th at 778 ("[B]oth the Supreme Court and this circuit have declined to extend *Humphrey's Executor* to agencies that are not a 'mirror image' of the FTC."); *see also Exela Enter. Sols., Inc. v. Nat'l Lab. Rels. Bd.*, 32 F.4th 436, 443–45 (5th Cir. 2022) (declining to extend *Humphrey's Executor* to insulate the General Counsel of the NLRB's "quintessentially prosecutorial functions" from executive control). But even if the Fifth Circuit had not already so restricted *Humphrey's Executor* to a sliver of applicable circumstances, the Supreme Court recently overruled this exception in its entirety and rendered it wholly inoperative. *Slaughter*, 2026 WL 1855612, at *15 ("If anything more *is* left of *Humphrey's*, we overrule it. *Humphrey's* has for decades been a result in search of a rationale.").

The second exception, which appears in both *United States v. Perkins*, 116 U.S. 483 (1886), and *Morrison*, 487 U.S. at 654, pertains to inferior officers and stands for the proposition that Congress can provide for-cause "tenure protections to certain inferior officers with narrowly defined duties." *Seila Law*, 591 U.S. at 204. This legal rule does not resolve the present action, as "ALJs are inferior officers insulated by two layers of for-cause removal protection—an arrangement the Supreme Court and this circuit have both held unconstitutional." *SpaceX*, 151 F.4th at 767. The layered removal protection afforded these inferior officers "not only protects

[them] from removal except for good cause, but withdraws from the President any decision on whether that good cause exists." *Free Enter. Fund*, 561 U.S. at 495. Under such a scenario, "[t]he President is stripped of the power our precedents have preserved, and his ability to execute the laws—by holding his subordinates accountable for their conduct—is impaired." *Id.* at 496; *see also Jarkesy v. Sec. & Exch. Comm'n*, 34 F.4th 446, 465 (5th Cir. 2022) (holding removal restrictions unconstitutional in a case concerning SEC ALJs), *aff'd and remanded*, 603 U.S. 109 (2024).

By the nature of its construction, the second exception also does not protect Board Members, as they constitute principal, rather than inferior, officers. *See SpaceX*, 151 F.4th at 774–78; *see also Kennedy v. Braidwood Mgmt., Inc.*, 606 U.S. 748, 761 (2025). Thus, the five members at the helm of the NLRB must seek refuge from direct executive authority under either *Humphrey's Executor*, which is now nothing more than a tattered illusion, or a "special arrangement sanctioned by history," which is not readily apparent. *See, e.g.*, *Cook*, 2026 WL 1855613, at *4 (internal quotation marks omitted) (quoting *Consumer Fin. Prot. Bureau v. Cmty. Fin. Servs. Ass'n of Am., Ltd.*, 601 U.S. 416, 467, n.16 (2024) (Alito, J., dissenting)) (excepting Governors of the Federal Reserve from the categorical rule outlined in *Slaughter* due in part to their involvement in "one of the Nation's (and the world's) most important financial institutions"); *id.* at *36 (Barrett, J., dissenting) (discussing the monetary nature of the Federal Reserve exception in light of the absence of *Humphrey's Executor*).

Without an appropriate or applicable exception to the President's removal power, Board Members and ALJs alike are left to bear the full force of the simple constitutional truth that "[t]he President's power to remove is *essential* to the performance of his Article II responsibilities and control over the Executive Branch." *Exela*, 32 F.4th at 445 (emphasis added). "The removal power

helps the President maintain a degree of control over the subordinates he needs to carry out his duties as the head of the Executive Branch, and it works to ensure that these subordinates serve the people effectively and in accordance with the policies that the people presumably elected the President to promote." *Collins v. Yellen*, 594 U.S. 220, 252 (2021). Neither Board Members nor ALJs are exempt from the President's removal power, and the removal protections currently shielding both classes of officer violate this general constitutional principle. "Once an officer is appointed, it is only the authority that can remove him, and not the authority that appointed him, that he must fear and, in the performance of his functions, obey." *Bowsher v. Synar*, 478 U.S. 714, 726 (1986) (internal quotation marks omitted) (quoting *Synar v. United States*, 626 F. Supp. 1374, 1401 (D.D.C. 1986) (Scalia, Johnson, and Gasch, JJ.)). As a result, the Court finds the removal protections contained in 5 U.S.C. § 7521(a) and 29 U.S.C. § 153(a) unconstitutional under Article II of the United States Constitution.

## II.    Severance

Because the Court has declared both statutes unconstitutional as written, it has necessarily arrived at the issue of severance. *See SpaceX*, 151 F.4th at 773 (quoting *Space Expl.*, 741 F. Supp. 3d at 638). As will be evidenced below, the act of severing congressional statutes is not always a straightforward matter, but is nevertheless guided by a few overarching principles. "Generally speaking, when confronting a constitutional flaw in a statute, we try to limit the solution to the problem, severing any problematic portions while leaving the remainder intact." *Free Enter. Fund*, 561 U.S. at 508 (internal quotation marks omitted) (quoting *Ayotte v. Planned Parenthood of N. New Eng.*, 546 U.S. 320, 328–29 (2006)). "The standard for determining the severability of an unconstitutional provision is well established: 'Unless it is evident that the Legislature would not have enacted those provisions which are within its power, independently of that which is not, the

11

invalid part may be dropped if what is left is fully operative as a law.'" *Alaska Airlines, Inc. v. Brock*, 480 U.S. 678, 684 (1987) (citation modified) (quoting *Buckley v. Valeo*, 424 U.S. 1, 108 (1976) (per curiam)).

In other words, "in a statute which contains invalid or unconstitutional provisions, that which is unaffected by these provisions, or which can stand without them, must remain." *Albany Cnty. Sup'rs v. Stanley*, 105 U.S. 305, 312 (1881); *see also Barr v. Am. Ass'n of Political Consultants, Inc.*, 591 U.S. 610, 630 (2020) (opinion of Kavanaugh, J.) (suggesting that severance of a statute is proper where "[t]he remainder of the law is capable of functioning independently and . . . would be fully operative as a law."). At bottom, "[t]he relevant inquiry is 'whether the statute will function in a manner consistent with the intent of Congress.'" *Koog v. United States*, 79 F.3d 452, 462 (5th Cir. 1996) (quoting *Alaska Airlines*, 480 U.S. at 685).

This Court is not the first to be faced with the prospect of taking a scalpel to congressional legislation on account of 5 U.S.C. § 7521(a) or 29 U.S.C. § 153(a). In a case strikingly similar to this one, *Aunt Bertha v. National Labor Relations Board*, No. 4:24-CV-00798-P, 2026 WL 1365028, at *2 (N.D. Tex. May 15, 2026), a district court examined the very statutes at issue and found that both 5 U.S.C. § 7521(a) and 29 U.S.C. § 153(a) "cannot be severed" and that "severance would not remedy [the plaintiff's] injury in any event. As the Fifth Circuit made clear, the harm lies in being subjected to an unconstitutional proceeding at all." *Id.* at *3. On severability generally, the district court opined that:

> The constitutional defect identified by the Fifth Circuit is not contained in a single, easily severable clause. It arises from a "stacked" or "layered" structure of removal protections spanning multiple statutes and institutions. And because the constitutional problem is produced by multiple layers acting in combination, there is no single provision the Court can excise to cure the defect. Any potential fix would require the Court to decide which layer to remove—Board-member tenure, ALJ

12

good-cause protection, Merit Systems Protections Board adjudication, or some combination thereof. Each option produces a materially different regime, and nothing in the statutory text indicates which Congress would have preferred. When the remedy depends on selecting among competing institutional designs, the Court is no longer severing, it is reconstructing or legislating.

*Id.* at \*2.

Another district court examined the constitutionality of 5 U.S.C. § 7521(a) in the context of the Department of Justice's Office of the Chief Administrative Hearing Officer, and "focuse[d] on the Judiciary's confined role in the separation of powers" to similarly find that "severability is not the proper solution here." *Walmart Inc. v. King*, No. CV 623-040, 2024 WL 1258223, at \*4 (S.D. Ga. Mar. 25, 2024), *rev'd and vacated sub nom.*, *Walmart, Inc. v. Chief Admin. Law Judge of Office of Chief Admin. Hearing Officer*, 144 F.4th 1315 (11th Cir. 2025). The district court in that case declined to sever the removal protection and instead granted a permanent injunction against the underlying proceedings, as "[r]ather than interfering with Congress's legislative role by trying to re-work the statutes in place, the Court finds on balance, an equitable remedy is more favorable." *Id.* The district court's decision was ultimately reversed by the Eleventh Circuit, which not only found 5 U.S.C. § 7521(a) constitutional as written, but also stated in dicta that "even if § 7521(a) were unconstitutional, we still would reverse because the 'good cause' restriction in § 7521(a) is easily severable from the rest of the APA." *Walmart*, 144 F.4th at 1348.

Still other circuit courts have ruled on the issue of severability in a similar context. In *Decker Coal Co. v. Pehringer*, 8 F.4th 1123, 1136 (9th Cir. 2021), the Ninth Circuit declared that "[e]ven if we were to conclude that 5 U.S.C. § 7521 is unconstitutional, we would sever only one level of protection." And in *Care One, LLC v. Nat'l Labor Relations Bd.*, 166 F.4th 335, 349 (2d Cir. 2026), the Second Circuit held that "even if [the plaintiff] were successfully to demonstrate the unconstitutionality of the challenged dual for-cause removal protection afforded ALJs . . . . the only

13

relief to which it would be entitled would be a declaratory judgment severing the unconstitutional removal protections from the broader statutory scheme."

The Court is presently tasked with analyzing the same statutes at issue in *Aunt Bertha* to either: (a) similarly hold that the statutes lie beyond the reach of severability and grant Plaintiff a permanent injunction; or (b) sever the unconstitutional provisions. 2026 WL 1365028, at *2. While this issue has been discussed by several courts across the United States, this Court will primarily rely upon precedent offered by two Supreme Court cases in crafting an appropriate remedy: *Seila Law LLC v. Consumer Financial Protection Bureau*, 591 U.S. 197 (2020), and *Free Enterprise Fund v. Public Company Accounting Oversight Bd.*, 561 U.S. 477 (2010).

Most recently, the Supreme Court addressed a statutory restriction on the President's ability to remove the Director of the Consumer Financial Protection Bureau ("CFPB") in *Seila Law*, 591 U.S. at 204. There, the Supreme Court determined that the President's removal power, as specifically related to the CFPB Director, could not be congressionally limited to instances of "inefficiency, neglect of duty, or malfeasance in office." *Id.* at 207 (internal quotation marks omitted) (quoting 12 U.S.C. § 5491(c)(1), (3)). Upon concluding that the Director's statutory removal protection violated the Constitution, the Supreme Court held that the challenged statute was severable and offered a variety of reasons to support severability. *Id.* at 234–35. First, the Supreme Court noted that the rest of the relevant statute was "capable of functioning independently, and there is nothing in the text or history of the Dodd-Frank Act that demonstrates Congress would have preferred *no* CFPB to a CFPB supervised by the President." *Id.* at 235. Second, it bestowed repeated emphasis "on the critical question whether Congress would have preferred a dependent CFPB to *no agency at all*," labeling it "the only question we have the

14

authority to decide." *Id.* at 236. Third, it highlighted the existence of an express severability clause, which gave the Supreme Court no reason "to wonder what Congress would have wanted . . . because it has told us." *Id.* at 235. Finally, the Supreme Court noted that "[w]e think it clear that Congress would prefer that we use a scalpel rather than a bulldozer in curing the constitutional defect we identify today." *Id.* at 237.

In *Free Enterprise Fund*, the Supreme Court considered "a new situation not yet encountered by the Court"—a President was unable to remove principal officers (SEC Commissioners) except for "inefficiency, neglect of duty, or malfeasance in office," who in turn were restricted from removing inferior officers (the Public Company Accounting Oversight Board members) unless the same principal officers found "'on the record' and after 'notice and opportunity for a hearing,' that the Board member" (A) "willfully violated any provision of th[e] [Sarbanes-Oxley] Act, the rules of the Board, or the securities laws," (B) "willfully abused . . . authority," or (C) "failed to enforce compliance with any such provision or rule." 561 U.S. at 483, 486–87. After ruling that "[t]he Act's restrictions are incompatible with the Constitution's separation of powers," the Supreme Court held that the "unconstitutional tenure provisions are severable from the remainder of the statute." *Id.* at 498, 508. In making this determination, the Supreme Court acted under several important considerations. First, it found that "the existence of the Board does not violate the separation of powers, but the substantive removal restrictions . . . do." *Id.* at 508–09. Second, it stated that "[t]he remaining provisions are not 'incapable of functioning independently,' and nothing in the statute's text or historical context makes it 'evident' that Congress, faced with the limitations imposed by the Constitution, would have preferred no Board at all to a Board whose members are removable at will." *Id.* at 509 (internal

15

citation omitted). Finally, and perhaps most importantly here, the Supreme Court implicitly rejected the argument that severance is only available when courts have a single viable avenue with which to sever congressional legislation, as it severed a removal protection despite finding that "the language providing for good-cause removal is only one of a number of statutory provisions that, working together, produce a constitutional violation." *Id*.

It may be readily inferred, from what has been stated, that three immediate questions pertaining to severability remain ripe for this Court's determination: first, whether severance may suffice to cure the injury identified by the Fifth Circuit in *SpaceX*; second, whether 29 U.S.C. § 153(a) is severable; and third, whether 5 U.S.C. § 7521(a) is severable. Each question will be addressed in kind.

### A.    Whether severance may cure the identified injury

As noted above, *Aunt Bertha* held in part that "severance would not remedy [the relevant constitutional] injury in any event. . . . [a]llowing the proceedings to go forward under a judicially altered framework would perpetuate [the plaintiff's] harm." 2026 WL 1365028, at *3 (internal citation omitted). Far from failing to address the constitutional injury identified in *SpaceX*, the Court finds that, in this instance, "severance of the 'for cause' restriction[s] remedies the . . . injury as found by the majority of [the Fifth Circuit] of being overseen by an unconstitutionally structured agency." *Collins v. Mnuchin*, 938 F.3d 553, 592 (5th Cir. 2019). In arriving at this conclusion, the Court places particular emphasis on the Fifth Circuit's express recognition in *SpaceX* that severance has the potential to cure the harm caused by the challenged dual-layer removal protection scheme. 151 F.4th at 773 ("If the Employers later prevail on the merits, we may then consider whether severance is appropriate."). Because the Court has determined that Plaintiff has succeeded on the merits of its Article II claims, the Court has acted within the proper limits of

16

inquiry in considering whether severance is an appropriate remedy under the circumstances. *See id.*

### B.    Whether 29 U.S.C. § 153(a) is severable

The Court finds the relevant portion of 29 U.S.C. § 153(a) severable from the rest of the NLRA. To reiterate, this statutory provision protects "[a]ny member of the Board" from being removed by the President except for "neglect of duty or malfeasance in office." 29 U.S.C. § 153(a). On its face, this provision shares a striking similarity to the statutory protection that was ultimately severed by the Supreme Court in *Seila Law*, which insulated the CFPB Director from removal except for "inefficiency, neglect of duty, or malfeasance in office." 591 U.S. at 207. The similarities do not end there, however. In similar fashion to the relevant statute in *Seila Law*, and as expressly recognized by the Fifth Circuit in *SpaceX*, the NLRA contains a severability clause pertaining to 29 U.S.C. § 153(a). *See SpaceX*, 151 F.4th at 772. That clause, 29 U.S.C. § 166, reads as follows: "If any provision of this subchapter, or the application of such provision to any person or circumstances, shall be held invalid, the remainder of this subchapter, or the application of such provision to persons or circumstances other than those as to which it is held invalid, shall not be affected thereby." Thus, the Court need not so deeply entertain the "critical question" pertinent to severability, i.e., whether "Congress would have preferred a dependent [agency] to *no agency at all*," because 29 U.S.C. § 166 expresses a congressional preference for severance over a general permanent injunction against the NLRB at large. *Seila Law*, 591 U.S. at 236; *SpaceX*, 151 F.4th at

17

772 (holding that "when Congress has expressly provided a severability clause, the court's task is simplified," and that "the NLRA contains such a clause").[3]

Moreover, real-world developments support the severability of 29 U.S.C. § 153(a). On January 27, 2025, the President removed NLRB Board Member Gwynne Wilcox from office without providing cause for the removal. *Wilcox v. Trump*, 775 F. Supp. 3d 215, 222 (D.D.C. 2025). Less than a month later, on February 10, 2025, the President also removed MSPB Member Cathy Harris from office in the same manner. *Harris v. Bessent*, 775 F. Supp. 3d 164, 169–70 (D.D.C. 2025). Naturally, both instances of removal occurred despite the existence of congressional statutes which, by their express terms, appear to protect Wilcox and Harris from presidential removal except for good cause. Upon review, the Supreme Court determined that "the Government is likely to show that both the NLRB and MSPB exercise considerable executive power," and subsequently granted a stay, which prevented either officer from being reinstated while the propriety of the removals was litigated. *Trump v. Wilcox*, 145 S. Ct. 1415 (2025). The practical implications of the Supreme Court's decision to stay enforcement of 29 U.S.C. § 153(a) suggest that the statute is severable, as the NLRA continued to be observed despite non-enforcement of the removal protection afforded NLRB Board Members. *See Wilcox*, 145 S. Ct. at 1419 (Kagan, J., dissenting) ("So the majority's order just restates the question this case raises . . . *unless the majority thinks it has provided a hint*." (emphasis added)). The resolution of *Wilcox* thus supports the proposition that 29 U.S.C. § 153(a) may be declared unconstitutional and severed without jeopardizing the whole of

---

[3] This ruling also parallels the decision of multiple circuit courts facing the issue of severing an unconstitutional removal protection afforded a principal officer. *See, e.g.*, *Harris v. Bessent*, 160 F.4th 1235, 1257 (D.C. Cir. 2025) ("[W]e hold that the appropriate resolution here is to disregard the statutory removal restrictions for NLRB and MSPB members."); *Kaufmann v. Kijakazi*, 32 F.4th 843, 846 (9th Cir. 2022) ("42 U.S.C. § 902(a)(3), which permits the President to remove the Commissioner of Social Security only for 'neglect of duty or malfeasance in office,' violates separation of powers principles and must be severed from the statute."); *Rodriguez v. Soc. Sec. Admin.*, 118 F.4th 1302, 1314 (11th Cir. 2024) (agreeing with the Ninth Circuit that "§ 902(a)(3) is severable").

the NLRA. *See SpaceX*, 151 F.4th at 777 ("While the Justices were careful to say that they 'did not ultimately decide' the issue, their stay order reinforces our conclusion that Board Members' insulation from presidential removal likely violates Article II." (citation modified) (quoting *Wilcox*, 145 S. Ct. at 1415)).

The Court finds that the removal protection contained in 29 U.S.C. § 153(a) should be severed such that the statute reads, in relevant part: "Any member of the Board may be removed by the President."

### C.    Whether 5 U.S.C. § 7521(a) is severable

The Court finds that the unconstitutional portion of 5 U.S.C. § 7521(a) may also be cured by severance. Once again, this statute protects the tenure of ALJs such that they may be removed "only for good cause established and determined by the [MSPB] on the record after opportunity for hearing before the Board." 5 U.S.C. § 7521(a). The district court in *Aunt Bertha* found that severing this statute would require the Court to "reconstruct[]" or "legislat[e]" in its absence. 2026 WL 1365028, at *2. It held that "[t]here is no obvious way to sever this language without fundamentally altering it," as removing the good cause limitation altogether would "convert the statute into an at-will removal regime that Congress did not enact," and "[r]emoving the MSPB's role would leave no decisionmaker or procedure to determine good cause." *Id.* at *3. Finally, it suggested that "[w]hen the remedy depends on selecting among competing institutional designs, the Court is no longer severing, it is reconstructing or legislating." *Id.* at *2.

While the Court remains ever wary of the potential over-extension of the scope of judicial power, the relevant precedent indicates that "when multiple provisions of law combine to cause a constitutional injury, the [Supreme] Court's current approach allows the Court to decide which provision to sever." *Seila Law*, 591 U.S. at 260 (Thomas, J., concurring in part and dissenting in

part); *see Cunningham v. Matrix Fin. Servs., LLC*, 531 F. Supp. 3d 1164, 1170 (E.D. Tex. 2021) ("[T]he interaction of the preexisting statutory provision and the newly added exception worked in tandem to run afoul of the Constitution."). In consideration of the doctrine of severance generally, this Court has previously held that, "[g]iven the deliberate focus courts direct toward legislative intent in this area, adjudicating severability is a judicial act that is, at least somewhat, legislative." *Cunningham*, 531 F. Supp. 3d at 1174 (citing *Barr*, 591 U.S. at 651 (Gorsuch, J., concurring in the judgment in part and dissenting in part)). The mere existence of multiple avenues of severance, by itself, is not enough to remove entire statutory provisions from the Court's purview such that the Court becomes deprived of its recognized ability to "attempt, within the bounds of [its] institutional competence, to implement what the legislature would have willed had it been apprised of the constitutional infirmity." *Levin v. Com. Energy, Inc.*, 560 U.S. 413, 427 (2010). By severing 5 U.S.C. § 7521(a)—thus rendering it inoperable—the Court need not affirmatively rewrite entire pieces of legislation, but rather merely define what the law is in the absence of certain inoperable pieces.

Having defended the Court's ability to consider the remedy of severance despite the interconnected nature of the constitutional issue at hand, the Court now turns to the practical reality of its direct application to 5 U.S.C. § 7521(a). According to the "strong presumption of severability," federal courts typically "presume[] that an unconstitutional provision in a law is severable from the remainder of the law or statute." *Barr*, 591 U.S. at 625; *Mnuchin*, 938 F.3d at 592 ("We start from the 'normal rule that partial, rather than facial, invalidation is the required course.'" (quoting *Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491, 504 (1985))), *aff'd in part, vacated in part, rev'd in part sub nom.*, *Collins*, 594 U.S. at 220. Severance is appropriate where the surviving

20

provisions of a given statute are capable of functioning independently and "nothing in the statute's text or historical context makes it 'evident' that Congress . . . would have preferred no Board at all to a Board whose members are removable at will." *Free Enter. Fund*, 561 U.S. at 509. Of course, the Court must also consider "whether the statute will function in a *manner* consistent with the intent of Congress." *Alaska Airlines*, 480 U.S. at 685. Because there is no indication that the APA provisions separate and apart from 5 U.S.C. § 7521(a) are incapable of functioning independently from that statute as applied to ALJs, and because "nothing in the statutory scheme suggests that Congress would prefer a complete unwind of actions taken by the [NLRB] to [NLRB ALJs] removable at will," the Court finds severance to be appropriate in this instance. *Mnuchin*, 938 F.3d at 592. While Congress might have "preferred an independent [ALJ class] to a dependent one," there is no evidence that Congress would rather have had no ALJs or administrative regulatory guidelines applicable to the NLRB at all. *Seila Law*, 591 U.S. at 236.

Not only that, but the NLRB has previously functioned without the relevant ALJ removal protection, as "[b]efore the Administrative Procedure Act, hearing examiners 'were in a dependent status' to their employing agency, with their classification, compensation, and promotion all dependent on how the agency they worked for rated them." *Lucia v. Sec. & Exch. Comm'n*, 585 U.S. 237, 260 (2018) (Breyer, J., dissenting) (quoting *Ramspeck v. Fed. Trial Examiners Conference*, 345 U.S. 128, 130 (1953)); *Arthrex, Inc. v. Smith & Nephew, Inc.*, 953 F.3d 760, 769–70 (Fed. Cir. 2020) (Dyk, J., dissenting) ("Before the passage of the Administrative Procedure Act . . . in 1946, administrative law judges . . . did not have any removal protections or any special status distinguishing them from other agency employees."). As originally enacted in 1935, the NLRA provided that ALJs, then called "trial examiners," were to oversee administrative hearings and

21

risked being "substituted at the will of the Board" during proceedings. *NLRB v. Botany Worsted Mills*, 133 F.2d 876, 882–83 (3d Cir. 1943). Though the APA changed this specific policy, it also advanced a plethora of regulatory guidelines applicable "to all administrative agencies, including the [NLRB]." *Purdy v. Commodity Futures Trading Comm'n*, 968 F.2d 510, 518 n.21 (5th Cir. 1992). That the NLRB once operated without ALJ removal protections is heavily indicative of Congress's intent to maintain some form of regulation regarding national labor disputes over none at all—there is nothing to suggest that the unconstitutionality of specific ALJ tenure protections, which were added over a decade after the NLRA's enactment, should necessarily bring the entire NLRB or APA down with them.

Furthermore, the Court does not find that the severance of 5 U.S.C. § 7521(a) would place the operation of either the NLRA or the APA beyond the *manner* intended by Congress, as individual ALJs are already considered "agent[s] of the Board." 29 C.F.R. § 102.1(f). The NLRB is not obligated to use ALJs, and even where ALJs are used, their recommendations only become final "if no timely or proper exceptions are filed." 29 C.F.R. §§ 102.34, 102.50, 102.48(a); 29 U.S.C. §§ 160(b), (c). Given the structure and history behind both pieces of legislation, the Court finds that restoring the ability of the Board Members to remove ALJs at will does not so upset the structure or operation of the NLRA or APA as to render either statute inoperable or otherwise erosive to its stated ends. *See Barr*, 591 U.S. at 628 ("[I]t is fairly unusual for the remainder of a law not to be operative.").

However, while direct severance might well be *available* to cure the constitutional defect present in 5 U.S.C. § 7521(a), the Court faces a rather pressing issue: is direct severance *appropriate* to cure the same? Undoubtedly, the question of severability as to ALJ protections poses an intricate

22

dilemma. From the Court's perspective, the double-layer removal protection presents the Court with two theoretical options.[4] The first option was outlined above, and would see this Court sever the removal protection from 5 U.S.C. § 7521(a) while leaving the MSPB structurally unchanged. The second option focuses on the MSPB, and involves severing the removal protection offered to MSPB members while leaving the "good cause" removal protection for ALJs intact under 5 U.S.C. § 7521(a).

**The First Option**. Under the first option, the Court could sever the language "only for good cause established and determined by the Merit Systems Protection Board on the record after opportunity for hearing before the Board," such that the statute (as applied to NLRB ALJs) simply reads: "An action may be taken against an administrative law judge . . . by the agency in which the administrative law judge is employed." So severed, 5 U.S.C. § 7521(a) would render ALJs directly responsible to Board Members, who, under the terms of this Memorandum Opinion and Order, are to be removable by the executive at will.

This specific solution was utilized by a district court in a case directly referenced by the Fifth Circuit in its *SpaceX* decision: *VHS Acquisition Subsidiary No. 7 v. National Labor Relations Board*, 759 F. Supp. 3d 88 (D.D.C. 2024). *SpaceX*, 151 F.4th at 774 n.52. Like this Court, the district court in *VHS* ultimately recognized the perplexing issue before it: "if it is the *combination* of the removal restrictions that offends the Constitution, which layer goes? *Free Enterprise Fund* instructs that the Constitution displaces the bottom-layer removal restriction. But here, there are arguably

---

[4]  The Court recognizes that the severance of 29 U.S.C. § 153(a) alone might initially appear to solve the conundrum regarding the removal protections afforded the NLRB ALJs. However, initial impressions can be deceiving. In an opinion addressing a similar double-layer removal protection issue, the Fifth Circuit noted that "allow[ing] removal for essentially any reason" by the non-MSPB reviewing agency would still "not solve the Article II problem," as "the MSPB is part of the mix as well." *Jarkesy*, 34 F.4th at 465.

two bottom layers—the ALJ is protected from removal by NLRB action and an MSPB determination. So it is a stickier question." *VHS*, 759 F. Supp. 3d at 100 (internal citation omitted). The district court explored a variety of solutions, and expressly refused to cut out the MSPB while leaving the "good cause" layer intact, because "the agency still could not remove its ALJs at will. So while the MSPB layer would go away, the NLRB layer would remain. That structure is simply a rehash of what *Free Enterprise Fund* condemned." *Id.* at 100 (internal citation omitted). Ultimately, the district court found that "the sounder solution is to recognize that the ALJs are removable at will by the NLRB, the agency that appoints them. That means 5 U.S.C. § 7521(a) must simply read: 'An action may be taken against an administrative law judge . . . by the agency in which the administrative law judge is employed.'" *Id.* (internal citation omitted).

A similar solution was endorsed by the Eleventh Circuit in dicta. In *Walmart*, 144 F.4th at 1349, the Eleventh Circuit held that "[s]evering the MSPB's 'good cause' determination in § 7521(a) would not render the rest of the [statutory] framework incapable of functioning," and further noted that "it is not evident that Congress would have preferred no ALJs at all, as opposed to ALJs removable at will."

**The Second Option**. Alternatively, under the second option, the Court could attempt to preserve the "good cause" removal protection afforded ALJs by targeting and severing the MSPB members' removal protection under 5 U.S.C. § 1202(d). Following severance, § 1202(d) would read: "Any member may be removed by the President." This construction would ensure that the MSPB retains its statutory role in reviewing personnel actions against ALJs, and ALJs would remain protected by the applicable "good cause" standard, but MSPB members would become removable at will by the President. Theoretically, in this scenario, ALJs would be removable only

24

for "good cause" by principal officers subject to at-will removal by the President, and would therefore enjoy only one layer of tenure protection.

This solution was endorsed by the D.C. Circuit in *Harris*, which held that "the appropriate resolution here is to disregard the statutory removal restrictions for NLRB and MSPB members, not to blue-pencil provisions from among the full panoply of the executive powers of each agency." 160 F.4th at 1257. And, as detailed above, the Supreme Court has also arguably "hinted" at the widespread adoption of this option. *SpaceX*, 151 F.4th at 776–77 ("[T]he [Supreme] Court observed that 'the Government is likely to show that both the NLRB and MSPB exercise considerable executive power.'" (quoting *Wilcox*, 145 S. Ct. 1415)); *see Slaughter*, 2026 WL 1855612, at *11 ("What text, history, and structure settle, our precedent confirms—the President may remove his subordinates at will.").

**Appropriate Severance**. The Court has identified two possible acts of severance: (a) sever the bottom-layer of protection and remove the ALJ's good cause protection, which would effectively take the MSPB out "of the mix," *Jarkesy*, 34 F.4th at 465, and leave ALJs removable by Board Members at will; or (b) sever the top-layer safeguards afforded MSPB members. In consideration of the caselaw identified above, the scope of the present litigation[5] (including the procedural posture of this case), and the narrow constitutional finding presented in *SpaceX*, the Court opts to follow the district court in *VHS* by adopting the first severance option. *VHS*, 759 F.

---

[5] Plaintiff does not directly challenge the constitutionality of 5 U.S.C. § 1202(d), and the MSPB has not been named as a party to the present action. The Court is wary of wielding the severability doctrine haphazardly under such a scenario:

> To start, it's hard to see how today's use of severability doctrine qualifies as a remedy at all: The plaintiffs have not challenged the government-debt exception, they have not sought to have it severed and stricken, and far from placing "unequal treatment" at the "heart of their suit," they have never complained of unequal treatment as such.

*Barr*, 591 U.S. at 652–53 (Gorsuch, J., concurring in the judgment in part and dissenting in part).

Supp. 3d at 100. Thus, the Court similarly recognizes "that the ALJs are removable at will by the NLRB, the agency that appoints them." *Id.* This remedy appears most appropriate under the circumstances, and neatly severs the MSPB review provision from the APA as applied to NLRB ALJs. By adopting this avenue of severance, the Court respects the Supreme Court's prior decision to sever a similar "bottom-layer removal restriction," and ensures that the NLRB will be fully responsible for the actions of its ALJs, "which are no less subject than the [NLRB]'s own functions to Presidential oversight." *Id.*; *Free Enter. Fund*, 561 U.S. at 509.

Of course, under different circumstances, the Court might have followed the D.C. Circuit and went the other way—rendering both the NLRB Board Members and MSPB members directly responsible to the President by severing their removal safeguards. *Harris*, 160 F.4th at 1257; *see Free Enter. Fund*, 561 U.S. at 509–10 ("It is true that the language providing for good-cause removal is only one of a number of statutory provisions that, working together, produce a constitutional violation."). Indeed, the apparent growing national appeal of the second option identified by this Court may very well render the election of the first option entirely moot. At a minimum, the Supreme Court's "hint" in *Wilcox*, 145 S. Ct. at 1415, which calls into question the removal protections enjoyed by "both the NLRB and MSPB," suggests that the MSPB's removal protection might not pose a constitutional threat for much longer. *Id.* at 1419 (Kagan, J., dissenting); *Care One*, 166 F.4th at 357 (Pérez, J., concurring) ("Some indications suggest that removal protections for top-level agency officials appointed by the President—here, the NLRB's Board and members of the MSPB—may not be long for this world."). This holds especially true after the Supreme Court's majority opinion in *Slaughter* incited the dissent to pose the necessary question: "How should bodies like the MSPB or NLRB, which are mostly adjudicatory but may also possess some other

functions, be treated?" 2026 WL 1855612, at *49 (Sotomayor, J., dissenting). Stated differently, while "[t]oday, dozens of agencies," including the MSPB, "are headed by commissioners or board members removable only for cause," the Court has little confidence that such will be the case tomorrow. *Id.* at *34.

While the Court has taken action to address and remedy the constitutional issues before it as an alternative to "trigger[ing] a major regulatory disruption [that] would leave appreciable damage to Congress's work," it has not foreclosed the opportunity for future congressional legislation to address the same. *Walmart*, 144 F.4th at 1349 (internal quotation marks omitted) (quoting *Seila Law*, 591 U.S. at 237); *Axon Enter., Inc. v. Fed. Trade Comm'n*, 598 U.S. 175, 189 (2023) (citing *Free Enter. Fund*, 561 U.S. at 508 to recognize that "[o]nly the Court's ability to sever the relevant statute's for-cause removal provision enabled the Board to keep running."). "As in every severability case, there may be means of remedying the defect in the [NLRB's] structure that the Court lacks the authority to provide. [The] severability analysis does not foreclose Congress from pursuing alternative responses to the problem . . . ." *Seila Law*, 591 U.S. at 237. "Congress of course remains free to pursue [additional] options going forward." *Free Enter. Fund*, 561 U.S. at 510.

The Court finds that 5 U.S.C. § 7521(a) will be severed to read, in relevant part, and as applied to NLRB ALJs: "An action may be taken against an administrative law judge appointed under section 3105 of this title by the agency in which the administrative law judge is employed."

## III.    Injunctive Relief

Severance has rendered injunctive relief moot. *See SpaceX*, 151 F.4th at 772–73. For the reasons listed above, Plaintiff's harm has been remedied by the Court's act of severance, and its request for a permanent injunction will be denied.

27

## CONCLUSION

It is therefore **ORDERED** that Defendants' Motion for Summary Judgment (Dkt. #25) and Plaintiff's Motion for Summary Judgment (Dkt. #27) are **GRANTED in part** and **DENIED in part**.

**IT IS SO ORDERED.**

**SIGNED this 27th day of July, 2026.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE